**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

| | |
|---|---|
| **MICHAEL ELLISON, et al.,** | |
| **Plaintiffs,** | |
| **v.** | **Civil Action No. 1:23-cv-00132-MSN-LRV** |
| **INOVA HEALTH SYSTEM FOUNDATION, et al.,** | |
| **Defendants.** | |

## INOVA'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

Rather than seriously engaging Inova's motion on its merits, Plaintiffs have resorted to obfuscation and sideshows by manufacturing irrelevant and immaterial evidence that they did not communicate to Inova decision makers during their employment. But Plaintiffs' revisionism cannot change the history of what actually occurred.  Not only were these alleged beliefs not described in discovery; in many cases, what Plaintiffs now ask the Court to consider brazenly encompasses hypothetical outcomes or describe their alleged states of mind well after they had left Inova's employ. Plaintiffs' inadmissible allegations fail to place any material fact in dispute.

Simply put, once Plaintiffs' requests to be excused from complying with Inova's Immunization Program Policy ("IPP") were denied, they elected to find work elsewhere.  Because both Plaintiffs, in their contemporaneous communications to Inova, sought only to be excused from accepting a vaccine developed or tested using fetal cells, and because the option of a vaccine ***not*** developed or tested using fetal cells was available before either left Inova's employ, their religious failure to accommodate claims fail.

I.      **PLAINTIFFS CANNOT SURVIVE SUMMARY JUDGMENT BY OFFERING "ADDITIONAL FACTS"**

The thirty-one paragraphs of proposed "Additional Facts" that Plaintiffs include in their Opposition violate this Court's Local Rules and, moreover, are immaterial. Opp'n at 6-11.[1] As a preliminary matter, Local Civil Rule 56(B) states that "[a] brief in response to [] a motion [for summary judgment] shall include a specifically captioned section listing all material facts as to which it is contended that there exists a genuine issue necessary to be litigated and citing the parts of the record relied on to support the facts alleged to be in dispute."  E.D. Va. Local Civil Rule 56(B).  There is no process in either the Federal Rules of Civil Procedure or this Court's Local Rules for a response brief to set forth "additional facts."  *See id.*; Fed. R. Civ. P. 56.  Accordingly, the Court should not consider the non-compliant paragraphs.  *See, e.g.*, *Kashif v. PNC Bank, N.A.*, Civil No. 1-20-cv-01118-MSN-TCB, 2021 WL 5579759, at *1 n.1 (E.D. Va. Nov. 29, 2021) (declining to consider "plaintiff's own statement of material facts" in response to summary judgment motion "because non-moving parties may respond to a motion for summary judgment only in the manner provided by the Federal and Local Rules of Civil Procedure").

As Inova has stated, what each Plaintiff communicated to Inova regarding their exemption requests is the universe of information relevant to the analysis of their Title VII religious failure-to-accommodate claims.  *See* ECF No. 127 at 17-19.  Moreover, even were the Court to consider Plaintiffs' "Additional Facts," it is evident that most rest on irrelevant, immaterial after-the-fact assertions conjured by Ms. Graham and Mr. Ellison in their latest Declarations.  *See* ECF Nos. 128-1 and 128-2.  Logically, Inova cannot have considered or been motivated by the views first

---

[1] All citations in this brief to "Opp'n at ___" refer to Plaintiffs' Memorandum in Opposition to Inova's Motion for Summary Judgment (ECF No. 128).  All citations to "Inova Mem. at ___" refer to the Brief in Support of Inova's Motion for Summary Judgment (ECF No. 118), and "Inova SUMF ¶ ___" refers to the Statement of Undisputed Material Facts on pages 3-19 of that Brief.

expressed by each Plaintiff in self-serving declarations made on February 23, 2024 – well over a

year after the relevant decisions were made. *See* ECF Nos. 128-1 and 128-2; *see* Opp'n at pp. 7-

11 (¶¶ 2-18, 20-21, 23-31). Paragraphs 2-18, 20-21, and 23-31, therefore, should be stricken. *See*

*Evans v. Techs. Apps. & Serv. Co.*, 80 F.3d 954, 962 (4th Cir. 1996) (reiterating that "summary

judgment affidavits cannot be conclusory" and affirming decision to strike "self-serving opinions

without objective corroboration" as "not significantly probative" of material facts).

Inova does not dispute that Ms. Graham: (1) filed a Charge of Discrimination with the

Equal Employment Opportunity Commission (EEOC); (2) submitted one of her several medical

exemption requests shortly after November 2021; and (3) requested a religious exemption after

her medical exemption was denied. *See* Opp'n at p. 7, ¶ 1; p. 8, ¶ 19; p. 9, ¶ 22; *see also* ECF No.

118-54; Inova's SUMF ¶¶ 35, 51-52 (undisputed); ECF No. 118-35; ECF No. 121-7 (same).[2]

None of these facts creates or even suggests a genuine issue for trial, however.

## II.  ARGUMENT

### A.  Ms. Graham's Claim is Barred Because She Failed to Exhaust Her Administrative Remedies

Ms. Graham failed to exhaust her administrative remedies before the EEOC concerning

her discharge, and her arguments that the allegations of her EEOC Charge are "reasonably related"

to her pleading allegations are unpersuasive. *See* Opp'n at 11-13. The primary case that Ms.

Graham cites in opposing dismissal on these grounds is *Sydnor v. Fairfax Cnty.*, 681 F.3d 591,

595 (4th Cir. 2012). *See* Opp'n at 9.[3] This case is readily distinguishable from *Sydnor*.

---

[2] Plaintiffs' contention that Ms. Graham's July 11, 2022 "submission is Dkt. 121-9 in this case" is incorrect. Opp'n at 10 ¶ 22. That submission appears at ECF No. 121-7.

[3] Ms. Graham's assertion that "Inova has never made any coherent response" (Opp'n at 12) is patently false. Inova briefed these issues with respect to Ms. Graham's claim in the First Amended Complaint, when opposing her Motion for Leave to Amend, and in response to her claim in the Second Amended Complaint. ECF No. 38 at 9-10; ECF No. 41 at 3-6; ECF No. 62 at 12-13; ECF

In *Sydnor*, the plaintiff's EEOC Charge challenged her manager's failure to grant a reasonable accommodation with "lighter duty work." 681 F.3d at 592. In her lawsuit, the plaintiff also alleged that the denial of her request to work while using a wheelchair was discriminatory. *See id.* at 593. The Fourth Circuit reversed the lower court's decision dismissing the latter, reasoning that a "variation in the[] proposed accommodations does not mean that [the plaintiff] failed to exhaust her administrative remedies." *Id.* at 595. "Put differently, the *Sydnor* plaintiff did not change the type of discrimination alleged, just the type of accommodation . . . she requested." *Walton v. Harker*, 33 F.4th 165, 174 (4th Cir. 2022) (citing *Sydnor*, 681 F.3d at 596).

Here, Ms. Graham has changed the substance of her claim from what was alleged in her EEOC Charge, which challenged the denial of her requests for accommodation on pregnancy and religious discrimination grounds. *See* ECF No. 118-54. Again, a failure to provide an accommodation is a discrete act, as is termination. *See* Inova Mem. at 22-23 (collecting cases). Ms. Graham's Charge assertion that Inova told her she "w[ould] not be able to return to [Inova]" after her FMLA leave expired (*see* Opp'n at 11; ECF No. 118-54) does not suffice. Indeed, according to Ms. Graham, she was "on FMLA [maternity] leave [beginning] July 26, 2022." ECF No. 118-54; *see also* Inova SUMF ¶ 54 (undisputed). If accurate, her FMLA leave was exhausted 12 weeks later, on October 18, 2022. *See* 29 U.S.C. § 2612(a)(1). Yet, as Ms. Graham acknowledges, she remained employed for nearly two months more. *See* SAC ¶ 136.

Ms. Graham's assertion that "the EEOC investigation of her charge was still underway" when her employment with Inova ended is incorrect. Opp'n at 13; *see* Inova SUMF ¶ 58 (undisputed). As Plaintiffs' counsel well know, they sent correspondence to the EEOC dated

---

No. 79 at 17-18. The Court has not addressed Inova's arguments on this point, so the issue remains ripe for resolution. *See* ECF No. 76 at 3 n.2.

November 1, 2022 (and which the agency received on November 16) "request[ing] that the EEOC dismiss the Charge[] filed by Ms. Graham . . . and issue [a] Notice[] of Right-to-Sue pursuant to 29 CFR § 1601.28(a)(2)[.]"  **Exhibit 56**: Nov. 1, 2022 Letter Requesting A. Graham Right-to-Sue Notice; *see also* **Exhibit 57**: Relevant Excerpt of EEOC Activity Log, at Inova_Ellison 0021069 (EEOC received and uploaded "Correspondence with Charging Party['s] Attorney/Representative" entitled "2022.11.16_NRTS Request" on Nov. 28, 2022).  The Activity Log reflects that the EEOC took no action after receiving this right-to-sue request other than issuing a closure notice.  *See* Ex. 57 at Inova_Ellison 0021068.  In short, the issue is not that Ms. Graham's discriminatory termination allegations "g[ot] stale"; the fatal flaw is that Ms. Graham and her counsel cut off the investigation before a termination claim became ripe.  *See* Opp'n at 13.

Inova does not contend that Ms. Graham must "use two separate charging documents" to challenge the discrete acts of (1) the denial of her exemption request and (2) her termination. Opp'n at 13.  But Ms. Graham either must have filed a new charge or supplemented her initial charge to raise the issue of her termination after it occurred.  She did neither.

Ms. Graham's assertion that "Inova cites no decision" confirming these requirements is also wrong.  Inova cited *Kiel v. Mayo Clinic Health System Southeast Minnesota* in its opening brief.  Inova Mem. at 23, *citing* __ F. Supp. 3d ___, 2023 WL 5000255 (D. Minn. Aug. 4, 2023). Plaintiffs ignored *Kiel*, but its reasoning is illuminating.  In *Kiel*, two plaintiffs (Ms. Ihde and Ms. Miller) each filed EEOC charges "before they were terminated" asserting that the denial of their respective religious exemption requests violated Title VII.  2023 WL 5000255, at 6.  "Neither Ihde nor Miller supplemented or amended their EEOC Charges after they were terminated."  *Id.*[4]  The

---

[4] Notably, each plaintiff filed a second EEOC charge alleging that she was discharged based on her *age* and/or disability, but did not allege that their employment ended because of religious

Court reasoned that "[s]ince termination is considered a discrete act" under *AMTRAK v. Morgan*, 536 U.S. 101 (2002) and its progeny, and "Plaintiffs Ihde and Miller" failed to "exhaust it in an EEOC charge[,]" the Title VII termination claims should be dismissed. 2023 WL 5000255, at 6.

Ms. Graham's December 2022 discharge qualifies as an allegation of a "separate actionable 'unlawful employment practice'" from the denial of her accommodation request. *Morgan*, 536 U.S. at 114; *see also* Inova Mem. at 22-23. Thus, because Ms. Graham's "administrative charge alleges one type of discrimination"—the denial of her religious (and pregnancy) accommodation requests —"and [her] claim encompasses another type"—termination—her claim as to the latter should be dismissed. *Chacko*, 429 F.3d at 509; *Walton*, 33 F.4th at 174; *see* Inova Mem. at 22.

## B. No Reasonable Jury Could Conclude Ms. Graham Notified Inova of Sincere Religious Beliefs in Her Last-Ditch July 11, 2022 Request

As Inova has explained, "the threshold question of sincerity [ ] must be resolved in every case." *United States v. Seeger*, 380 U.S. 153, 185 (1965); *see* Inova Mem. at 24. This is because "while the 'truth' of a belief is not open to question, there remains the significant question whether it is 'truly held.'" *Seeger*, 380 U.S. at 185 (1965). "To be sure," as the *Union Independiente* case Plaintiffs rely upon explains, "assessing the bona fides of an employee's religious belief is a delicate business." *EEOC v. Union Independiente de la Autoridad de Acueductos y Alcantarillados*, 279 F.3d 49, 56 (1st Cir. 2002) (cited in Opp'n at 18). But "the defendant is entitled to hold the plaintiff to his [or her] burden, making it 'entirely appropriate, indeed necessary, for a court to engage in analysis of the sincerity of someone's religious beliefs . . . .'" *Id.* (quoting *Protos v. Volkswagen of Am., Inc.*, 797 F.2d 129, 137 (3d Cir. 1986)); *see also Philbrook v. Ansonia Bd. of Educ.*, 757 F.2d 476, 481 (2d Cir. 1985), *aff'd on other grounds*, 479

---

discrimination. *See Ihde v. Mayo Clinic*, Civil No. 22-1327 (JRT/ECW) (D. Minn.), at ECF Nos. 38-2 (Ihde Charges) & 38-5 (Miller Charges).

U.S. 60 (1986).  And, as Plaintiffs concede, "if an employee actually lies to his [or her] employer and asserts a religious belief that he [or she] does not really hold, of course the employer has no legal obligation to accommodate it[.]"  Opp'n at 17.  Here, there is no genuine factual dispute that Ms. Graham's July 11, 2022 submission was inconsistent with her several prior submissions and her conduct, of which Inova was aware.

Ms. Graham's conduct throughout her employment was markedly inconsistent with the anti-abortion beliefs she professed in her final last-ditch submission.  *See* EEOC Compliance Manual at § 12-I-A-4; *see also Reed v. Faulkner*, 842 F.2d 960, 963 (7th Cir. 1988) ("Evidence of nonobservance is relevant on the question of sincerity[.]"); *Gardner-Alfred v. FRB of N.Y.*, Case No. 22-cv-1585 (LJL), 2023 WL 6214863, at *13 (S.D.N.Y. Sept. 25, 2023) ("'act[s] in a manner inconsistent with [an individual's] belief'" evidence that the professed belief is not sincere) (quoting *ISHKON, Inc. v. Barber*, 650 F.2d 430, 441 (2d Cir. 1981)).  Contrary to her assertion that she does not "believe in abortions, as murder is considered a sin," Ms. Graham informed Inova in writing at the outset of her employment in January 2021 that she had no objection to assisting with medical procedures that included abortions and end-of-life care decisions.  *Compare* Inova Ex. 35 (ECF No. 118-35) *with* Inova SUMF ¶ 16 (undisputed).  Indeed, during the entirety of her employment with Inova in its Emergency Department, Ms. Graham was required under the Emergency Medical Treatment and Labor Act (EMTALA) to stabilize any patient who came in with an emergency medical condition, including by assisting in abortion when deemed medically necessary.  *See* 42 U.S.C. §§ 1395dd(a), (e)(1).  Despite her post hoc justifications, she never objected or notified Inova her views had changed. Moreover, although she alleged on July 11, 2022 that she "do[es] not personally use any vaccines with fetal cells," Ms. Graham admitted during her deposition that she had received many other vaccines, including the influenza vaccine

in 2021, which Inova recorded as part of her immunization record.  Inova SUMF ¶ 44 (undisputed).

Here, as in *Aukamp-Corcoran v. Lancaster General Hospital,* which both sides discuss, "[i]t is undeniable that both the circumstances and timing surrounding [Ms. Graham's] request for a religious-based exemption to [Inova's] vaccine requirement are suspicious."  *See* Civil Action No. 19-5734, 2022 WL 507479 at *4 (E.D. Pa. Feb. 18, 2022).  Again, recall that none of Ms. Graham's first three exemption requests between August 2021 and January 2022 were religious at all; she requested medical exemptions.  Inova SUMF ¶¶ 17, 35, 38 (undisputed). While beliefs may evolve over time, "if the employee only adopted the religious belief a short time before requesting an accommodation[,]" the employee's belief is much more "likely to be disingenuous" than if an employee has had a long-standing religious practice.  *Aukamp-Corcoran*, 2022 WL 507479, at *4 (citing *Hansard v. Johns-Manville Prods. Corp.*, 1973 WL 129 at *2 (E.D. Tex. Feb. 16, 1973)).  When the last of her medical exemption requests was denied on March 23, 2022, Ms. Graham for the first time requested a religious exemption, less than 48 hours later – expressly because "[her] medical exemption has been revoked."  Inova SUMF ¶¶ 41-43 (undisputed); *see also id.*  (plaintiff admitted she "only requested her religious-based exemption after she had researched vaccines 'from a medical perspective'" and "did not request a religious exemption" until two days after her medical exemption request proved unsuccessful).  This is a textbook example of a religious exemption request "follow[ing] an earlier request by the employee for the same benefit for secular reasons[.]"  EEOC Compliance Manual at § 12-I-A-4.  And despite showing that she could promptly submit an exemption request when she chose to do so, as evidenced by her March 25, 2022 submission, she waited until the day before her July 12, 2022 compliance deadline to submit her July 11 correspondence.  Inova SUMF ¶¶ 50-51.

Plaintiffs' assertion that Inova "never asked Ms. Graham for additional information

substantiating her beliefs" brazenly misrepresents the record. Opp'n at 17. To the contrary, Inova requested further information in response to Ms. Graham's January 31, 2022 medical exemption request; Ms. Graham failed to respond. Inova SUMF ¶¶ 39, 40. After denying Ms. Graham's first religious exemption request, which she made on March 25, 2022, Inova invited Ms. Graham to "submit additional information for consideration." Inova Ex. 30 (ECF No. 118-30); *see* Inova SUMF ¶ 45 (undisputed). Ms. Graham responded with new information predominantly consisting of a letter from attorney Isaiah Kalinowski of the Bosson Legal Group and a letter from Pastor Lynda Stover of Colfax Christian Church in Buffalo, Kansas. Inova Ex. 31 (ECF No. 118-31); Inova SUMF ¶ 46 (undisputed). Ms. Graham admitted during her deposition that Pastor Stover was not her spiritual counselor and that she has spoken to Pastor Stover only two or three times. Inova SUMF ¶ 47 (undisputed); *cf. Aukamp-Corcoran*, 2022 WL 507479, at *5 (finding pastor letter "insufficient evidence for Plaintiff to meet her burden of proving a *prima facie* case of discrimination" where plaintiff "only attended [church] sporadically" and "had never discussed her spiritual beliefs with [that pastor] before [plaintiff] asked [the pastor] to write the letter for her"). Tellingly, neither letter said anything about abortion-related objections. ECF No. 118-31.

When reviewing Ms. Graham's anonymized May 10, 2022 submission, Inova's Religious Exemption Committee expressly observed, among other things, that she had made several prior unsupported medical exemption requests, first submitted her religious exemption request two days after those were denied, and submitted a lawyer letter. *See* ECF No. 118-33 at Inova Ellison 27742-43. When the Committee took individual votes on whether Graham's anonymized exemption request reflected a sincere religious belief, three of four voted "no." *See* ECF 118-32; *see also* Motew Dep. 218:1 – 220:5. (ECF 118-3). Plaintiffs' claim that "Inova made no finding . . . previously" that Ms. Graham's beliefs were not sincere is wrong. Opp'n at 17.

A person's professed religious beliefs cannot be a "limitless excuse for avoiding all unwanted…obligations." *Finkbeiner v. Geisinger Clinic*, 623 F. Supp. 3d 458, 465 (M.D. Pa. 2022), *appeal dismissed*, 2023 WL 6057495 (3d Cir. Sept. 18, 2023); *see* ECF No. 76 at 10. Because the objective record in this case is replete with evidence of Ms. Graham's disingenuous conduct, set against, at most, a scintilla of evidence in her favor, Inova should be granted summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 ("The mere existence of a scintilla of evidence in support of the plaintiff's position [is] insufficient" to stave off summary judgment.).

### C. The Exemption Requests Plaintiffs Actually Submitted to Inova Establish There Was No Conflict Between Their Stated Beliefs and the Novavax Vaccine.

In its ruling allowing Mr. Ellison's Title VII claim to proceed to discovery based on his pleading allegations that Inova's policy "required that [its] employees receive a vaccine manufactured by Pfizer, Moderna, or Johnson & Johnson[,]" the Court also explained that, "an employer would need only widen its list of accepted vaccinations to include the non-objectionable vaccines [that were not developed using fetal cell lines] in order to accommodate an employee's abortion-based aversion to the COVID-19 vaccine." ECF No. 76 at 12 n.11. The record developed during discovery unambiguously establishes that Inova had done so, and during Mr. Ellison and Ms. Graham's employment.

Following the enactment of the CMS Mandate, Inova updated the religious exemption process for the IPP and published an update on February 24, 2022. Inova SUMF ¶ 31 (undisputed). Under the IPP, Inova employees were compliant with the COVID-19 vaccine requirement if they received the Pfizer, Moderna, or Johnson & Johnson vaccine, *or "[a]ny other vaccine series authorized for EUA [i.e., Emergency Use Authorization] by the FDA [i.e., Food and Drug Administration] or WHO [i.e., World Health Organization]*." Inova Ex. 21 (ECF No. 118-21) at

Inova_Ellison 0004944 (emphasis added).

As Plaintiffs concede, the FDA granted an Emergency Use Authorization (EUA) to the Novavax COVID-19 vaccine on July 13, 2022.[5]  Inova SUMF ¶ 76; ECF No. 76 at 12 n.11 (citing U.S. Food and Drug Administration, FDA Authorizes Emergency Use of Novavax COVID-19 Vaccine, located at: *https://tinyurl.com/yu85kdmk* (July 13, 2022)).[6]  By virtue of this EUA, Inova deemed vaccination with the Novavax vaccine compliant with its IPP beginning the same day.  *See* Inova Ex. 21 (ECF No. 118-21).

1. **Neither Plaintiff Informed Inova During Their Employment of Any Conflict Between Their Beliefs and the Novavax COVID-19 Vaccine.**

Summary judgment is appropriate for the additional reason that neither Plaintiff's submissions to Inova conveyed any conflict between their alleged beliefs and their ability to receive the Novavax COVID-19 vaccine.  What matters in determining whether Inova owed either Plaintiff an accommodation is what each actually chose to communicate to Inova during his or her employment.  *See Blackwell v. Lehigh Valley Health Network*, 2023 WL 5807840, at *7 (E.D. Pa. Sept. 7, 2023) ("examin[ing] the beliefs Plaintiff . . . *actually informed Defendant of*" when evaluating failure-to-accommodate claim) (emphasis in original); ECF No. 76 at 8-10 & n.7 (analyzing plaintiffs' actual exemption requests).  Yet Plaintiffs inexplicably, and without evidentiary support, "dispute that Mr. Ellison 'did not communicate to Inova any concern with the Novavax vaccine[.,'" Opp'n at 6.  Nor could they.  As Mr. Ellison testified under oath at his

---

[5] Plaintiffs contest that the Novavax vaccine was not developed using fetal cell lines.  *See* Opp'n at 4-5.  However, as explained below, there is no genuine factual dispute on this point.

[6] An archived version of the July 13, 2022 FDA News Release can now be found at https://web.archive.org/web/20220713224000/https://www.fda.gov/news-events/press-announcements/coronavirus-covid-19-update-fda-authorizes-emergency-use-novavax-covid-19-vaccine-adjuvanted (last viewed Feb. 28, 2024).

deposition:

> [Q.]  **Did you ever communicate to Inova your concerns that the Novavax COVID-19 vaccine contained and was derived from fetal stem cells?**
>
> A.  **No.**

Ellison Tr. 100:1-4 (cited in Inova's SUMF ¶ 83) (emphasis added).  Thus, as Plaintiffs concede in their motion, their religious exemption requests "did ***not*** specifically address the Novavax vaccine[.]"  ECF No. 121 at 17 (emphasis added).

Plaintiffs' present assertions that Mr. Ellison "expressly applied for an accommodation from the requirement that he receive ***any*** COVID-19 vaccine," and that both Mr. Ellison and Ms. Graham "expressly told Inova that they objected to *all* COVID vaccines," are false.  Opp'n at 7, 18 (emphases in original). To the contrary, Mr. Ellison's actual exemption requests show that he specifically requested an exemption from any vaccine "developed or tested using aborted fetal cell lines[,]" though he acknowledged that "these fetal cells are not in the vaccines[.]"  Inova's Ex. 42 (ECF No. 118-42) at Inova_Ellison 0010808; ECF No. 121-4 at 3 (same); *see* Inova SUMF ¶ 65.[7] Likewise, Ms. Graham, after submitting four other exemption requests that were denied (two of which requested a medical exemption), asserted in a July 11, 2022 letter that she objected to vaccines that used "fetal cell testing in creating and testing the vaccine[,]" which she believed included J&J and Pfizer.  Inova SUMF ¶¶ 35, 38, 42, 46, 51; *see* Inova Ex. 35 (ECF No. 118-35) at 3; ECF No. 121-7 at 3 (same).  Neither of them objected to the Novavax vaccine, much less stated generally that they would refuse to be vaccinated even if a vaccine free from the testing they found objectionable was available.

---

[7] To the extent Plaintiffs seek to rely on Mr. Ellison's March 21, 2022 submission, the Court has already rejected and dismissed claims resting on "the medical and scientific concerns" in that request.  ECF No. 76 at 8-9 & n.8; *see* Inova SUMF ¶ 59.

Plaintiffs' assertion that "the Novavax vaccine was not approved by either the FDA or Inova until after Mr. Ellison [or Ms. Graham] had completed all of [their] religious accommodation applications" cannot help them stave off summary judgment.  Opp'n at 6.  Inova informed Mr. Ellison on August 9, 2022 (via email from Dr. Chand) and August 16, 2022 (via the updated Team Member FAQs and Novavax COVID-19 Vaccine Overview Fact Sheet posted to Inova's "COVID-19 Team Member Resources" page) that the Novavax vaccine was available and that it had no link to cell lines from aborted fetuses.  Inova SUMF ¶¶ 10, 77-79 (undisputed); *id.* ¶ 82 (undisputed in relevant part).  Ms. Graham likewise had access to Inova's COVID-19 Team Member Resources page when the Novavax vaccine materials were uploaded, and she received Inova's August 18, 2022 update informing her that "[t]he Novavax vaccine has been added to [Inova's] list of approved vaccines for COVID-19[.]"  Inova SUMF ¶¶ 10, 77-79 (undisputed); *id.* ¶ 80 (undisputed in relevant part).  Neither Plaintiff informed Inova of any conflict between their beliefs and the Novavax vaccine at any time between July 13, 2022 (when it received an EUA and, therefore, simultaneously became approved under Inova's IPP) and the end of their employment with Inova.  Evidently, an objection to a vaccine option that "was not presented to [the employer during the plaintiffs' employment]" necessarily "could not have been 'the basis or a motivating factor for the employee's discharge.'"  *Bube v. Aspirus Hosp., Inc.*, Case No. 22-cv-745-jdp, 2023 WL 6037655, at *5 (W.D. Wis. Sept. 15, 2023) (citation omitted); *Aukamp-Corcoran*, 2022 WL 507479, at *5 (disregarding pastor letter because employer "was not in possession of the letter when evaluating the sincerity of [p]laintiff's claimed religious objection").

An employer owes no duty to accommodate an employee's religious preferences that are not in conflict with its requirements. *See Dachman v. Shalala*, 9 F. App'x 186, 192 (4th Cir. 2001); *see also McCoy v. Cox Communications*, Case No. 1:22-cv-01289-DJN-JFA, ECF No. 38, at 6

(E.D. Va. Jan. 22, 2024) ("[T]he duty to accommodate [under Title VII] applies only where the employee's religious belief, observance, or practice conflicts with an employment requirement.") (citing *Dachman*).  Thus, as Plaintiffs concede, it is their burden to "show[] that their religious beliefs really do conflict with Inova's vaccine mandate." Opp'n at 20.  The record evidence in this case undeniably shows, however, that even if Mr. Ellison and/or Ms. Graham had informed Inova of a perceived conflict between their beliefs and their receipt of the Novavax vaccine (and, as shown above, they did not), no reasonable jury could conclude that there was, in fact, any conflict.

### 2. Plaintiffs Cannot Reasonably Question that the Novavax Vaccine Is Not Manufactured, Derived from, or Tested Using Fetal Cell Lines.

This Court, like others, has already taken judicial notice — relying on the FDA's webpage announcing the EUA of the Novavax COVID-19 vaccine — that "COVID-19 vaccines that were not developed using fetal cell lines have been available" since July 13, 2022.  ECF No. 76 at 12 n.11; *accord Bushra v. Main Line Health, Inc.*, __ F. Supp. 3d ___, Civil Action No. 23-1090, 2023 WL 9005584, at *3 (E.D. Pa. Dec. 28, 2023) ("The Novavax vaccine, which did not involve fetal cell lines, became available in July 2022."); *see also* Inova Mem. at 27.

Plaintiffs' assertion that the FDA "said nothing about the development history of the Novavax vaccine, and does not purport to address whether it has any link with abortion[,]" is wrong.  Opp'n at 21.  To the contrary, Plaintiffs acknowledge, as they must, that the FDA stated that "[t]he [SARS-CoV-2 spike protein in [the Novavax] vaccine is produced in *insect* cells" and "the Matrix M-adjuvant contains saponin extracts from the bark of the Soapbark tree that is native to Chile."  *See* Opp'n at 21 n.4 (emphasis added);  *see* n.6, *supra*.  In other words, the Novavax vaccine was developed and tested using insect cells and extracts from the bark of the Soapbark tree – ***not*** developed using fetal cell lines.  The FDA's Fact Sheet for Recipients and Caregivers, which is posted on and accessible from the same webpage, further reiterates that the Novavax

vaccine "contains a recombinant form of the SARS-CoV-2 spike protein produced from baculovirus infected Sf9 (fall armyworm) insect cells and Matrix-M adjuvant containing saponins derived from the soapbark tree." https://web.archive.org/web/20220721234639/https://www.fda.gov/media/159898/download (revised July/13/2022).[8]  These sources cannot ***reasonably*** be questioned.  Fed. R. Evid. 201(b)(2).

The other articles Plaintiffs cite constitute inadmissible hearsay.  *See* ECF Nos. 121-14, 121-15, 121-16, 121-17; *see also* Opp'n at 4-5 (citing same).  But even these avowedly pro-life and Christian organizations acknowledge that Novavax was not developed using fetal cell lines. In the *World* article that Plaintiffs cite, the research director of the Charlotte Lozier Institute acknowledged as true Novavax's explanation that a reference to the use of fetal tissue kidney cells (HEK-293) in an October 20, 2020 issue of *Science* magazine regarding tests on SARS-COV-2 (the virus that causes COVID-19) "was based on well-established scientific knowledge, did <u>not</u> include [Novavax's] vaccine protein, and is completely independent of Novavax COVID-19 vaccine development."  *See* ECF No. 121-14; *see also* ECF No. 121-16 at PageID# 2606 (linking to same *Science* article); ECF No. 121-19 (citing to same *Science* article). The authors of the *World*

---

[8] Other contemporaneous public health authorities further confirm this account.  For example, as experts at the University of Nebraska Medical Center explained, the spike proteins in the Novavax vaccine are manufactured using a five-step process:

1. Researchers select the desired genes that create certain SARS-CoV-2 antigens (spike protein).
2. Researchers put the genes into a baculovirus, an insect virus.
3. The baculovirus infects moth cells and replicates inside them.
4. These moth cells create lots of spike proteins.
5. Researchers extract and purify the spike proteins.

Nebraska Medicine, *Moths and tree bark: How the Novavax vaccine works* (July 21, 2022), *available at* https://www.nebraskamed.com/COVID/moths-and-tree-bark-how-the-novavax-vaccine-works (last viewed Feb. 28, 2024).

article then resort to unsupported speculation and conspiracy theories in arguing to the contrary. *See* ECF No. 121-14 (acknowledging there is "no problem" in some of the tests that Novavax used but speculating that "'there *seems to be* some contractual relationship where Novavax wants or needs to see at least some part of the results of [an outside study].'") (emphasis added).  None of this speculation can create a genuine factual dispute. The FDA's information confirms that the Novavax vaccine was not manufactured, tested, or developed from fetal cell lines, and even Plaintiffs' "evidence" concedes as much.

Plaintiffs' contention that the Court could not take judicial notice of Novavax's development and testing free of fetal cells because Inova raised the Novavax issue during the May 26, 2023 motions hearing also misses the mark.  *See* Opp'n at 20-21 & n.3.  The Federal Rules of Evidence explicitly permit the Court to "take judicial notice on its own[.]"  Fed. R. Evid. 201(c)(1). There is no error in doing so – let alone "plain error," as Plaintiffs argue.  Opp'n at 20.

Plaintiffs have distorted Inova's arguments about the import of Novavax's own statements. *See* Opp'n at 21-23.  Inova is not contending, and has never contended, that Novavax's own statements are the proper subject of judicial notice.  *See generally* ECF No. 118.  Rather, Inova's point is that it was permitted to rely on the FDA as the appropriate certifying authority when the FDA granted Novavax an EUA for its vaccine.  *See also* Inova Ex. 21 (ECF No. 118-21) at Inova_Ellison 0004944.  Novavax's statement that "No human fetal-derived cell lines or tissue are contained in the Novavax COVID-19 vaccine, adjuvanted, or used in its development, manufacture, or release testing" is certainly consistent with – and does nothing to undermine – the FDA's statements or the reasonableness of Inova's reliance.  Inova Ex. 47 (ECF No. 118-47).

### D. Mr. Ellison's August 1, 2022 Resignation, Which He Tendered After Accepting a Job and While His Exemption Request to Inova Was Still Pending, Cannot Form the Basis for A Constructive Discharge Claim

Plaintiffs' contention that "Mr. Ellison resigned on the day following the final deadline Inova had given him to be vaccinated" is another blatant misrepresentation of the record. Opp'n at 23. In fact, Mr. Ellison gave notice of his resignation on August 1, 2022. Inova's SUMF ¶ 72; *see* Inova's Ex. 44 (ECF No. 118-44) (Mr. Ellison's resignation letter dated August 1st, 2022). Although the effective date of his resignation was August 20, 2022, the Supreme Court has already answered "the question of when precisely an employee resigns" for purposes of a Title VII constructive-discharge claim: "[A] constructive-discharge claim accrues . . . when the employee gives notice of his resignation, not on the effective date of that resignation." *Green v. Brennan*, 578 U.S. 547, 564 (2016). Although Inova cited *Green* in its opening brief, Plaintiffs' brief ignores it. Inova Mem. at 28; *see generally* Opp'n. Notwithstanding, *Green* remains binding precedent.

Plaintiffs' notion that Mr. Ellison is not required to show the objective intolerability of his working conditions to make out a constructive discharge claim is also wrong. *See* Opp'n at 23-24. Again, "[t]he constructive-discharge doctrine contemplates a situation in which an employer discriminates against an employee to the point such that his 'working conditions become so ***intolerable*** that a reasonable person in the employee's position would have felt compelled to resign.'" *Green*, 578 U.S. at 555 (quoting *Pa. State Police v. Suders*, 542 U.S. 129, 141 (2004)) (emphasis added); *see* Inova Mem. at 28. Indeed, as the *Decoster* case Plaintiffs cite recognizes, "***the test is 'objective intolerability***,'" not 'deliberateness, or a subjective intent to force a resignation.'" *Decoster v. Becerra*, Civil Action No. TDC-21-2195, 2022 WL 3083443, at *4 (D. Md. Aug. 3, 2022) (quoting *EEOC v. Consol Energy, Inc.*, 860 F.3d 131, 144 (4th Cir. 2017)) (emphasis added); *see* Opp'n at 24.

Once situated in the accurate frame of reference, the question becomes: Could a reasonable jury conclude that Mr. Ellison's working conditions had become so intolerable that a reasonable person in his position would have felt compelled to resign on August 1, 2022?  The answer is a resounding "no."  Mr. Ellison's resignation letter itself acknowledges that he was "still awaiting a response" from Inova to his June 2022 Submission seeking a religious exemption at the time he resigned.  Inova Ex. 44 (ECF No. 118-44) at Inova_Ellison 0018568.

Mr. Ellison's handwritten timeline leaves no doubt about this relative sequence of events:



Relevant Excerpt of Inova's Ex. 43 (ECF No. 118-43).

Mr. Ellison also understood that he was compliant with Inova's IPP during the pendency of his June 2022 Submission.  SUMF ¶ 69.  Thus, Mr. Ellison was compliant as of August 1, 2022. *Id.*  As such, Mr. Ellison was **not** "'faced with a choice between resigning or being fired.'" *Decoster*, 2022 WL 3083443, at *4 (quoting *Burks v. Okla. Pub. Co.*, 81 F.3d 975, 978 (10th Cir. 1996)); *see* Opp'n at 24.  At most, Mr. Ellison was – like Ms. Decoster, whose constructive discharge claim was dismissed – "placed into a [weeks]-long process that may or may not have resulted in [his] discharge."  *Decoster*, 2022 WL 3083443, at *5; *accord Norgren v. Minn. Dep't of Human Servs.*, Civil No. 22-489 ADM/TNL, 2023 WL 35903, at **1, 6 (D. Minn. Jan. 4, 2023) (dismissing Title VII constructive discharge claim where plaintiff "submitted his retirement notice

to his supervisor . . . <u>before</u> [his employer] denied [his] exemption request") (emphasis in original).

Mr. Ellison's subjective view that he regarded his June 30 submission as a "'Hail Mary' pass" is irrelevant. *See* Opp'n at 10 ¶ 27; ECF No. 128-2 at ¶ 4. Again, the test is ***objective*** intolerability. *See Decoster*, 2022 WL 3083443, at \*4; *Consol Energy, Inc.*, 860 F.3d at 144. "'Intolerability' is not established by showing . . . that the employee subjectively felt compelled to resign.'" *Perkins v. Int'l Paper Co.*, 936 F.3d 212 (4th Cir. 2019); Inova Mem. at 29. Furthermore, the outcome of Mr. Ellison's June 2022 submission was far from a foregone conclusion. This is ***not*** a situation in which Inova "'act[ed] in a manner so as to have communicated to a reasonable employee that [he] will be terminated[.]'" *Decoster*, 2022 WL 3083443, at \*4 (quoting *EEOC v. Chi. Hosps.*, 276 F.3d 326, 332 (7th Cir. 2002)); Opp'n at 24.

Plaintiffs' repeated references to August 19, 2022 as the "deadline" are also misleading. *See* Opp'n at 24. Rather, if he failed to comply with the IPP, Mr. Ellison's employment would not end until August 27, 2022, at the earliest. Inova SUMF ¶ 81 (undisputed).[9] By notifying Inova of his resignation on August 1, Mr. Ellison unquestionably resigned "with a substantial amount of time remaining on [his] grace period." *Savel v. MetroHealth Sys.*, 2023 WL 4490395, at \*\*1-2, 10 (N.D. Ohio July 12, 2023).

Inova agrees that "even after Mr. Ellison gave notice of his resignation, he was free to change his mind and stay at Inova" until the last day of his employment on August 20, 2022. Opp'n at 25. But the evidence unquestionably shows that Mr. Ellison's mind was made up before then. Indeed, as he told Dr. Chand on August 10, 2022, "it is too late." ECF No. 118-51; *see* Opp'n at 6. And contrary to Mr. Ellison's reference in that email to "hav[ing] no choice but to

---

[9] Mr. Ellison has never contended he was placed on unpaid leave. *See* SAC (ECF No. 77) at ¶ 100; Inova Ex. 52 (ECF No. 118-52).

find other employment[,]" ***Mr. Ellison had already found and accepted other employment at Geisinger Health on July 18, 2022.*** *See* ECF No. 118-43 ("July 18, 2022 – Accepted offer [at] Geisinger"); *see* SUMF ¶ 71 (undisputed).   In other words, Dr. Chand's observation that Mr. Ellison's "decision might already be made" was exactly right.   Inova Ex. 51 (ECF No. 118-51) at Inova_Ellison 0018565.   Inova is entitled to summary judgment.

## III.   CONCLUSION

For the foregoing reasons, and the reasons set forth in its Brief in Support of its Motion (ECF No. 118), Inova respectfully requests that the Court enter an Order granting its Motion, dismissing all remaining claims with prejudice, closing this case, and awarding Inova such other relief as the Court deems just and proper.

Dated: March 1, 2024                                  Respectfully submitted,

*/s/ Nancy N. Delogu*
Nancy N. Delogu (VSB No. 37826)
LITTLER MENDELSON, P.C.
815 Connecticut Avenue NW
Suite 400
Washington, DC  20006.4046
Telephone:    202.842.3400
Facsimile:      202.842.0011
nndelogu@littler.com

Alexander P. Berg (VSB No. 95557)
Lauren M. Bridenbaugh (VSB No. 90586)
LITTLER MENDELSON, P.C.
1800 Tysons Boulevard
Suite 500
Tysons Corner, VA 22102
Telephone:    703.442.8425
Facsimile:      703.442.8428
aberg@littler.com
lbridenbaugh@littler.com

*Counsel for Defendants Inova Health System Foundation and Inova Health Care Services*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on the 1st day of March 2024, I caused a copy of the foregoing Inova's

Reply in Support of its Motion for Summary Judgment and the exhibits in support thereof to be

served through the Court's Electronic Case Filing (ECF) system on the following counsel of record:

       Joshua A. Hetzler
       Michael B. Sylvester
       Founding Freedoms Law Center
       707 E. Franklin Street
       Richmond, VA 23219
       Telephone:   804.971.5509
       josh@foundingfreedomslaw.org
       michael@foundingfreedomslaw.org

       Samuel W. Diehl
       Nicholas J. Nelson
       CROSSCASTLE PLLC
       333 Washington Avenue N.
       Suite 300-9078
       Minneapolis, MN 55401
       Telephone:   612.429.8100
       Facsimile:   612.234.4766
       sam.diehl@crosscastle.com
       nicholas.nelson@crosscastle.com

       *Counsel for Plaintiffs*

                              */s/ Nancy N. Delogu*
                              Nancy N. Delogu