UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| MICHAEL ELLISON, *et al.*, <br> *Plaintiffs*, <br><br> v. <br><br> INOVA HEALTH CARE SERVICES, *et al.*, <br> *Defendants*. | No. 1:23-cv-00132 (MSN/LRV) |

## MEMORANDUM OPINION

This matter comes before the Court on Defendants Inova Health System Foundation and Inova Health Care Services' (collectively "Inova") Motion for Summary Judgment (ECF 117) and Plaintiffs' Motion for Partial Summary Judgment (ECF 120).

I.  **BACKGROUND**[1]

This case involves a hospital's efforts to respond to the COVID-19 pandemic and how those efforts allegedly impacted its employees' exercise of their religious beliefs. During the pandemic, Inova added the COVID-19 vaccine to its Immunization Program Policy ("IPP") as a required vaccine for its employees. Def. Statement of Undisputed Material Facts, ECF 118, ("SUMF") ¶ 11. Plaintiffs Michael Ellison and Andrea Graham sought religious exemptions to this requirement, which Inova ultimately denied. Ellison and Graham now seek to recover under Title VII for Inova's alleged failure to accommodate their religious beliefs.

   A.  **Inova's COVID-19 Vaccination Requirement**

In July 2021, Inova added the COVID-19 vaccine to the IPP list of required vaccinations for its employees. SUMF ¶ 11. Employees were required to receive one of the three available

---

[1] The following facts are undisputed unless otherwise indicated.

1

COVID-19 vaccinations by September 1, 2021, unless they requested and received a medical or religious exemption. *Id.* ¶ 12. During this time, Inova's Team Member Health Department, which administered the IPP and ensured compliance, was empowered to grant exemption requests. *Id.* ¶ 13.

On November 5, 2021, the Centers for Medicare and Medicaid Services ("CMS") issued an interim final rule ("CMS Mandate") that required participating healthcare facilities, including Inova, to ensure that their staff receive the COVID-19 vaccine. *Id.* ¶ 24. Finding that vaccination of healthcare workers against COVID-19 is "necessary for the health and safety of individuals to whom care and services are furnished," and that staff who are unvaccinated "pose a serious threat to the health and safety of patients," CMS required participating facilities to ensure that their staff, including primarily remote workers who only periodically interact in person with healthcare personnel, to receive the COVID-19 vaccine. *Id.* ¶ 26 (quoting 86 Fed. Reg. at 61,559, 61,570). The CMS Mandate specified that "[r]equests for exemptions based on an applicable Federal law must be documented and evaluated in accordance with applicable Federal law and each facility's policies and procedures." *Id.* ¶ 27 (quoting 86 Fed. Reg. at 61,572).

Following the CMS Mandate, Inova updated its IPP and told its employees that it would be reevaluating exemption requests. *Id.* ¶¶ 28-31. As it related to COVID-19 vaccinations, the IPP required employees to "receive primary vaccination and booster dose(s) for COVID-19 … unless an exemption is granted." ECF 118-21. The IPP defined "primary vaccination" as "all recommended primary series doses of a Food and Drug Administration (FDA) authorized or World Health Organization (WHO) listed COVID-19 vaccine." *Id.* At the time the IPP was updated on February 23, 2022, there were three approved vaccines -- Pfizer, Moderna, and Johnson & Johnson -- and the IPP specified the primary series requirements for those vaccines. *Id.* In that same section,

2

the policy reiterated that "[a]ny other vaccine series authorized for [Emergency Use Authorization] by the FDA or WHO" would satisfy the primary vaccination requirement. *Id.*

Inova requested that its employees resubmit exemption requests using an updated form. SUMF ¶ 31. It had developed a more robust procedure for evaluating exemption requests: they were considered by a multi-disciplinary Religious Exemption Committee comprised of employees who served as clergy or provided spiritual care, clinical leaders, and Human Resources employees. *Id.* ¶ 32. The Committee reviewed anonymized requests to determine whether the applicant had demonstrated a sincerely held religious belief in conflict with the IPP and voted on whether to recommend the exemption should be granted. *Id.* ¶ 33. The Committee's recommendation was then shared with the Chief of Clinical Enterprise, the Chief People Officer, and the Chief of Staff, who would decide whether to adopt or reject the recommendation. *Id.* ¶ 34.

### B.  Plaintiff Michael Ellison

Ellison, who worked as a Data Insight Lead, was initially granted a religious exemption request on August 11, 2021. SUMF ¶¶ 19-20, 22. Inova informed Ellison on February 24, 2022, that it was reevaluating religious exemption requests and directed him to submit one under the new process. *Id.* ¶ 29.

Ellison submitted a religious exemption request on March 21, 2022, explaining that he "cannot, in good conscience, introduce to [his] body a medication that could induce harm." *Id.* ¶ 59. Inova denied this request on June 17, 2022, and it gave Ellison until July 1, 2022, to either comply with the IPP or submit additional information. *Id.* ¶ 64. Ellison submitted additional information after consulting with counsel, explaining that his "body is God's temple" and also including an objection to "any product developed or tested using aborted fetal cell lines" because of his "sincerely held religious belief in the sanctity of all human life." *Id.* ¶¶ 65-68.

Two weeks after Ellison submitted this additional information, on July 13, 2022, and while his exemption request was still pending, the FDA granted Emergency Use Authorization of the Novavax COVID-19 vaccine. *Id.* ¶ 76. Novavax, which developed and manufactured the vaccine, has stated that "[n]o human fetal-derived cell lines or tissue are contained in the Novavax COVID-19 Vaccine … or used in its development, manufacture or release testing." ECF 118-47. Plaintiffs dispute, however, "that the Novavax vaccine *in fact* was not developed using fetal cell lines." ECF 128 ("Pl. Opp.") at 4.

Before Inova reached a decision after consideration of Ellison's additional information, Ellison accepted another job and submitted a resignation letter. Ellison accepted a position with a different healthcare organization on July 18, 2022, agreeing to start with that employer on August 22, 2022. SUMF ¶ 71. On August 1, 2022, Ellison submitted a resignation letter to Inova, announcing that his resignation would be effective August 20, 2022. *Id.* ¶ 72.

Inova denied Ellison's exemption request on August 5, 2022, and gave him until August 19, 2022, to comply. *Id.* ¶¶ 75, 81. Four days later, Dr. Raj Chand, the President of Inova Fair Oaks Hospital wrote to Ellison informing him that the Novavax vaccine "will be available at retail pharmacies within a week and has no linkage to fetal cell lines." *Id.* ¶ 82. Ellison responded to Dr. Chand the next day that "it [was] too late." *Id.* ¶ 83.

### C. Plaintiff Andrea Graham

Graham began working for Inova as an emergency department nurse in March 2021. SUMF ¶ 14. At this time, she acknowledged that she did not seek a religious accommodation with respect to providing patient care of any sort, including patients receiving a "voluntary termination of pregnancy." *Id.* ¶ 16.

Graham requested a medical exemption from the IPP's COVID-19 vaccination requirement on August 5, 2021, on the basis of her pregnancy. Inova temporarily granted an exemption. *Id.* ¶¶ 17-18. On November 19, 2021, Inova informed Graham that she would need to resubmit a request if she still needed an exemption. *Id.* ¶ 28.

Graham submitted a renewed medical exemption request on January 3, 2022, on the basis of her "plan[ning] on having more children & nursing." *Id.* ¶ 35. Inova denied this request three days later. *Id.* ¶ 36.

On January 31, 2022, Graham submitted a second medical exemption request, citing her "high risk of miscarriage, clotting and bleeding" due to a "sub chorionic hemorrhage during [her] pregnancy." *Id.* ¶ 38. Inova requested more information from Graham's provider "to determine whether there is an identified medical condition for which the CDC-approved vaccines are contraindicated." *Id.* ¶ 39. Graham did not provide the requested information, and Inova denied the exemption request on March 23, 2022. *Id.* ¶¶ 40-41.

Two days later, Graham submitted a religious exemption request for the first time. *Id.* ¶ 42. Graham stated that her "body is a temple" and that although she had received many other vaccines, she had decided, after prayer, that she could not receive the COVID-19 vaccine. *Id.* ¶ 44. Inova denied this request on April 22, 2022, and gave her until May 6, 2022, to comply with the IPP. *Id.* ¶ 45.

On May 10, 2022, Graham submitted a second religious exemption request, this time including a letter from an attorney and a letter from a pastor. *Id.* ¶¶ 46-47. Inova denied the request on June 28, 2022, and gave Graham until July 12, 2022, to comply with the IPP. *Id.* ¶ 50.

One day before her deadline to comply, Graham submitted a third religious exemption request, in which, among other things, she invoked for the first time an objection to the vaccines

5

"due to the fetal cell testing in creating and testing the vaccine" because she does not "believe in abortions, as murder is considered a sin." *Id.* ¶ 52. Inova informed Graham that this request would not be presented to the Committee because it had already considered and rejected her requests twice. *Id.* ¶ 53. Two days after Graham submitted her third religious exemption request, the FDA granted Emergency Use Authorization of the Novavax vaccine. *Id.* ¶ 76.

Before Inova took any administrative action against Graham for noncompliance, she began her approved maternity leave. *Id.* ¶ 54. In the meantime, while she was on leave, Graham accepted a job at the Department of Veterans Affairs. *Id.* ¶ 55. She signed a discrimination charge before the Equal Employment Opportunity Commission ("EEOC") on September 8, 2022, complaining of religious and sex discrimination with respect to all her exemption denials. ECF 38-3. Around this time, while still on maternity leave at Inova, Graham began working for the Department of Veterans Affairs. SUMF ¶ 56. Her employment ended with Inova on December 7, 2022. *Id.* ¶ 58.

**D. Procedural History**

Plaintiffs brought a class action complaint against Inova, claiming that Inova's refusal to grant them exemptions to the IPP was unlawful religious discrimination. Inova moved to dismiss all the claims or strike the class allegations. ECF 37.

The Court granted in part and denied in part Inova's motion. ECF 76. The Court struck the class allegations and dismissed the majority of Plaintiffs' claims, with the exception of Plaintiffs' religious discrimination claim under Title VII. As to that claim, the Court held that Ellison had pleaded a sincere religious objection to the COVID-19 vaccine based on his religious objections to abortion. *Id.* at 11. Although the Court initially dismissed an analogous claim by Graham, the Court permitted her to amend her allegations to plead in greater detail the connection between Graham's abortion-based objection to the COVID-19 vaccines and her religious beliefs. ECF 75

6

at 6. As the case proceeded to discovery, the only remaining claims were Ellison's and Graham's Title VII claim that Inova failed to accommodate their religious objections to the COVID-19 vaccine based on the available vaccines' connection with abortion.

Inova has now moved for summary judgment at the close of discovery. ECF 117. Plaintiffs cross-moved for partial summary judgment on two limited issues: (1) whether Inova had notice of Plaintiffs' religious objections; and (2) whether Plaintiffs' stated beliefs conflict with Inova's vaccine requirement. ECF 120. The Court held oral argument on the motions, and they are now ripe for resolution.

## II.   LEGAL STANDARDS

Under Title VII, covered employers may not "discharge any individual, or otherwise … discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). It is therefore "an unlawful employment practice … for an employer to fail to reasonably accommodate the religious practices of an employee." 29 C.F.R. § 1605.2(b)(1).

To prevail on a failure-to-accommodate claim under Title VII, a plaintiff must prove that: "(1) he or she has a bona fide religious belief that conflicts with an employment requirement; (2) he or she informed the employer of this belief; [and] (3) he or she was disciplined for failure to comply with the conflicting employment requirement." *Chalmers v. Tulon Co. of Richmond*, 101 F.3d 1012, 1019 (4th Cir. 1996). "If the employee establishes a prima facie case, the burden then shifts to the employer to show that it could not reasonably accommodate the plaintiff's religious needs without undue hardship." *E.E.O.C. v. Firestone Fibers & Textiles Co.*, 515 F.3d 307, 312 (4th Cir. 2008) (cleaned up).

A movant is entitled to summary judgment if the movant shows that there is no genuine dispute as to any material fact. Fed. R. Civ. P. 56(a). In deciding a summary judgment motion, the Court "must view the evidence in the light most favorable to the nonmoving party and refrain from weighing the evidence or making credibility determinations." *Sedar v. Reston Town Center Property, LLC*, 988 F.3d 756, 761 (4th Cir. 2021). "An issue of material fact is 'genuine' if the evidence offered is such that a reasonable jury might return a verdict for the non-movant." *Id.* "Under this standard 'the mere existence of a scintilla of evidence' in favor of the non-movant's position is insufficient to withstand the summary judgment motion." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).

### III. ANALYSIS

The only remaining failure-to-accommodate claim at issue in this case is grounded in Plaintiffs' religious objections to abortion. After Ellison's religious exemption request was denied, he submitted further information to Inova where he explained that his religious beliefs concerning abortion prevented him from taking "any product developed or tested using aborted fetal cell lines." SUMF ¶ 68. Likewise, in Graham's third religious exemption request, she explained that she opposed taking the COVID-19 vaccine "due to the fetal cell testing in creating and testing the vaccine" because she believed that abortions were murder and "considered a sin." ECF 118-35.

Inova has moved for summary judgment on several grounds, all of which relate to Plaintiffs' ability to establish a *prima facie* case. As to both Ellison and Graham, Inova argues that there was no conflict between Plaintiffs' asserted religious beliefs and the IPP after the Novavax vaccine became available. Moreover, as to Graham, Inova argues that Graham failed to exhaust her administrative remedies and that no jury could reasonably find her abortion-related religious objections sincere. And as to Ellison, Inova argues that he cannot establish an adverse action

8

resulting from the exemption denial because he resigned and accepted employment elsewhere while his religious exemption request was still pending.

Inova is entitled to summary judgment because there is no genuine dispute of material fact as to whether Ellison or Graham held "a bona fide religious belief that conflicts with an employment requirement" after the FDA granted Emergency Use Authorization to the Novavax vaccine. *Chalmers*, 101 F.3d at 1019. Inova is also entitled to summary judgment as to Ellison for the alternative reason that he cannot establish that "he … was disciplined for failure to comply with the conflicting employment requirement." *Id.* Because the Court resolves the entire case on these grounds, it need not specifically address Plaintiffs' cross-motion for partial summary judgment nor Inova's other arguments concerning Graham's administrative exhaustion and the sincerity of her religious beliefs.[2]

### A. Plaintiffs' Religious Beliefs Did Not Conflict with the IPP.

---

[2] The Court is mindful that "assessing the bona fides of an employee's religious belief is a delicate business." *EEOC v. Union Independiente de la Autoridad de Acueductos y Alcantarillados de Puerto Rico*, 279 F.3d 49, 57 (1st Cir. 2002). "[T]he sincerity of an employee's religious belief" is ordinarily a "quintessential fact question[]" because it turns on an assessment of the employee's credibility. *Id.* at 56. "Credibility determinations … are jury functions, not those of a judge [in] ruling on a motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). At the same time, however, the Fourth Circuit has instructed trial courts to "actively engage with the [summary judgment] requirements to provide 'specific, material facts' … and to avoid 'conclusory allegations and denials' in analyzing the arguments of the parties." *Sedar*, 988 F.3d at 761 n.3.

With that guidance in mind, the Court is skeptical that there is a triable issue of fact as to whether Graham's religious belief is sincerely held. Graham did not raise a religious objection to fetal cell lines until her third religious (and fifth overall) exemption request. SUMF ¶ 52. She did not object to assisting with medical procedures that included abortions and end-of-life care decisions when she began her employment with Inova in 2021. *Id.* ¶ 16. And contrary to her statement in her exemption request that she "does not personally use any vaccines with fetal cells," Graham admitted in her deposition that she had in fact received many other vaccines that did, including the flu vaccine which she received in 2021. *Id.* ¶ 44. Graham's post-discovery affidavits, moreover, are inconsistent with regard to when she developed this belief: she first swore that "[s]ince at least July 2021, my understanding has been … that all available COVID-19 vaccines are either manufactured or tested using cell lines that were originally derived from aborted fetuses" (ECF 121-6 ¶ 10), but two weeks later she swore that "things changed significantly for me in April or May of 2022" when "someone told me that COVID-19 vaccines had been developed or tested using cells that originated from aborted fetuses" (ECF 128-1 ¶ 10).

Because the Court resolves Graham's claim on other grounds, however, the Court declines to rule on this "delicate" issue. 279 F.3d at 57.

Plaintiffs carry the initial burden of proving that their sincere religious beliefs "conflict[] with an employment requirement." *EEOC v. Firestone Fibers & Textiles Co.*, 515 F.3d 307, 312 (4th Cir. 2008). Both Ellison and Graham expressly conveyed a concern with vaccine products that use fetal cell testing in their development due to their religious objections to abortion. *See* SUMF ¶ 52 (Graham objecting to the COVID-19 vaccines "due to the fetal cell testing in creating and testing the vaccine" because "abortions … [are] considered a sin"); *id.* ¶ 68 (Ellison objecting to "any product developed or tested using aborted fetal cell lines" because of his "sincerely held religious belief in the sanctity of all human life"). It necessarily follows that, for Plaintiffs to establish that these beliefs conflict with an employment requirement, they must demonstrate that Inova's policy required them to take a vaccine that was "developed or tested using aborted fetal cell lines." *Id.* ¶ 68.

The relevant employment requirement here is Inova's IPP. The IPP stated that employees "must receive primary vaccination and booster dose(s) for COVID-19 … unless an exemption is granted." ECF 118-21. And the policy explained that "[p]rimary vaccination is defined as 2 weeks after receiving all recommended primary series doses of a Food and Drug Administration (FDA) authorized or World Health Organization (WHO) listed COVID-19 vaccine." *Id.* At the time the policy was updated in February 2022, there were three approved vaccines: Pfizer, Moderna, and Johnson & Johnson. The IPP therefore specified the primary series requirements for those approved vaccines, but in that same section, it also specified that "[a]ny other vaccine series authorized for EUA use by the FDA or WHO" would satisfy the primary vaccination requirement. *Id.*

There can be no genuine dispute that once the FDA granted Emergency Use Authorization for the Novavax vaccine on July 13, 2022, Plaintiffs could comply with the IPP by taking that

10

vaccine, which was accessible before Plaintiffs' employment with Inova ended. *See* ECF 118-21; SUMF ¶ 76. The IPP expressly includes "[a]ny … vaccine series authorized for EUA use by the FDA." ECF 118-21. Both Ellison and Graham were informed, moreover, before their separation from Inova of the option to take the Novavax vaccine. Graham received a communication on August 18, 2022, that "[t]he Novavax vaccine has been added to [Inova's] list of approved vaccines" and that "no human fetal-derived cell lines or tissue are contained in the Novavax Covid-19 vaccine, adjuvanted, or used in its development, manufacture, or release testing." SUMF ¶ 80. And Ellison personally received an email from the hospital's president on August 9, 2022, informing him that the Novavax vaccine "will be available at retail pharmacies within a week and has no linkage to fetal cell lines." *Id.* ¶ 82. By August 16, 2022, Inova had updated its COVID-19 Team Member Resources page to include that Novavax was available and on its list of approved vaccines. SUMF ¶¶ 77-79. There can be no genuine dispute that the IPP included Novavax as of July 13, 2022, and that by mid-August, before either Ellison's or Graham's employment with Inova ended, it was available to them.

The only remaining question is whether Novavax used fetal cell lines in the development or testing of its COVID-19 vaccine. It is important to reiterate that to survive summary judgment, Plaintiffs must establish with admissible evidence there is a genuine dispute on this point, as it is their burden to establish that their religious beliefs "conflict[] with an employment requirement." *Firestone Fibers & Textiles Co.*, 515 F.3d at 312. And "[a]n issue of material fact is 'genuine' if the evidence offered is such that a reasonable jury might return a verdict for the non-movant." *Sedar*, 988 F.3d at 761. Because Plaintiffs have not offered any admissible evidence on this point, however, there is no genuine dispute on this record that Novavax used fetal cell lines in the development or testing of its COVID-19 vaccine.

Novavax plainly stated to the public that "[n]o human fetal-derived cell lines or tissue are contained in the Novavax COVID-19 Vaccine … or used in its development, manufacture or release testing." ECF 118-47. In further communications with Inova officials, a Novavax scientist stated that any suggestions otherwise were "nonsense," and the "bottom line [i]s that no human cell lines have been used in the development, manufacture, testing or release of the [Novavax] vaccine." ECF 123-3 at 2.

Plaintiffs argue that these statements are inadmissible hearsay, but this argument misses the mark for two reasons. First, it is *Plaintiffs'* burden to establish a genuine issue of fact as to whether the Novavax vaccine used fetal cells lines in testing to make out a *prima facie* claim—not *Inova's* burden to prove otherwise. *See* Fed. R. Civ. P. 56(c)(1)(B) (explaining that a movant for summary judgment may support its assertion that there is no genuine issue of material fact by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact"). Second, and in any event, the Court finds these statements—made by press officials and the scientists who developed the vaccine at Novavax, a publicly traded company subject to securities laws—are admissible evidence under the residual hearsay exception because they have sufficient guarantees of trustworthiness and are "more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts." Fed. R. Evid. 807; *cf. Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1552 (9th Cir. 1989) (affirming trial court's admission of a public company's registration statement under the residual hearsay exception).

By contrast, Plaintiffs themselves have offered nothing but inadmissible hearsay in an attempt to create a fact issue as to the use of fetal cell lines in the development of the Novavax vaccine. Plaintiffs provide: (1) a report from the Charlotte Lozier Institute, a group that "advises

and leads the pro-life movement," which cites an article from Science magazine to support its conclusion that Novavax used fetal cell lines in confirmatory lab tests (ECF 121-16; ECF 121-17); (2) an article from World magazine which discusses the findings of the Charlotte Lozier Institute that "some confirmatory lab tests … used fetal cell lines" (ECF 121-14); and (3) a guidance from the Australian Catholic Bishops Conference, which states (without citing any source) that "[t]he HEK-293 cell line [a fetal cell line] was used to test the efficacy of the … Novavax vaccine[]" (ECF 121-15). The root of these claims, to the extent there is one, trace to the research of the Charlotte Lozier Institute, which in turn relies exclusively on one passage in the Science magazine article. But the relevant passage simply compares the virus's spike protein to existing data that had been derived from a fetal cell line. *See Bangaru, et al.*, Structural analysis of full-length SARS-CoV-2 spike protein from an advanced vaccine candidate, Science (Oct. 20, 2020) (emphasis added) ("*By comparison* with site-specific glycan processing of the spike protein produced in mammalian human embryonic kidney (HEK) 293F cells, both mammalian cells and insect cells exhibit extensive processing at most sites."). In the World magazine article, moreover, the research director of the Charlotte Lozier Institute acknowledges that Novavax's explanation of this passage—that it concerns tests "based on well-established scientific knowledge, did not include [Novavax's] vaccine protein, and is completely independent of Novavax COVID-19 vaccine development"—was "technically accurate." ECF 121-14. To the extent Plaintiffs' sources suggest that Novavax's vaccine was developed or tested with fetal cell lines, it is either unreliable hearsay within hearsay or without any support.

      These statements lack guarantees of trustworthiness and are inadmissible. At bottom, Plaintiffs have not done more than claim "that there is some metaphysical doubt as to the material

13

facts," which is insufficient to survive summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

Rather than respond directly to this analysis, Plaintiffs instead resist this analytical framework. As Plaintiffs see it, all that matters is that *they* "have reasonably assessed that the Novavax vaccine has too much of an association with abortion to be compatible with their religious beliefs." Pl. Opp. at 23. In their view, the "assertion that they object on religious grounds to all COVID-19 vaccines, including Novavax, is conclusive," regardless of whether the Novavax vaccine has any association with fetal cell lines. Pl. Opp. at 19.

This assertion distorts the appropriate legal analysis. Plaintiffs' argument is essentially that the entire first element—whether they have a "bona fide religious belief that conflicts with an employment requirement"—turns on their own assessment of their own religious beliefs. That proposition, however, would swallow the second half of the element—the requirement that their religious beliefs "conflict[] with an employment requirement." *Chalmers*, 101 F.3d at 1019. Plaintiffs stated that because they considered abortion a sin, they objected to "any product developed or tested using aborted fetal cell lines." SUMF ¶ 68; ECF 118-35. Assuming these are sincerely held religious beliefs, the next question is whether those beliefs conflict with the IPP, or whether instead the IPP permitted Plaintiffs to receive a COVID-19 vaccine that was not "developed or tested using aborted fetal cell lines." *Id.* Plaintiffs' argument, if accepted, would instead permit them to effectively manufacture a conflict with any employment requirement they seek to avoid. The law does not permit such a "blanket privilege." *Africa v. Commonwealth of*

14

*Pennsylvania*, 662 F.2d 1025, 1031 (3d. Cir. 1981) (citing *Wisconsin v. Yoder*, 406 U.S. 205, 215-16 (1972)).[3]

Because Plaintiffs have failed to establish a genuine dispute as to whether the Novavax vaccine used fetal cell testing in its development, they cannot satisfy the first element of their *prima facie* claim: that their religious beliefs conflicted with the IPP. Inova is therefore entitled to summary judgment as to both Ellison and Graham.

### B.     Ellison Did Not Suffer an Adverse Action.

Inova is also entitled to summary judgment as to Ellison, in the alternative, because he cannot establish the third element of his *prima facie* claim: that "he … was disciplined for failure to comply with the conflicting employment requirement." *Chalmers*, 101 F.3d at 1019. Ellison submitted his resignation before Inova denied his exemption request—at a time when Inova still deemed Ellison in compliance with the IPP. He was therefore not disciplined for failing to comply with the IPP.

There is no dispute that Ellison submitted his resignation letter on August 1, 2022, four days before his second exemption request was decided. *See* SUMF ¶¶ 72, 75. Ellison argues, however, that he was constructively discharged. To establish constructive discharge, a plaintiff must prove that he was discriminated against by his employer "to the point where a reasonable person in his position would have felt compelled to resign." *Green v. Brennan*, 578 U.S. 547, 555 (2016). This "intolerability" element "is assessed by the objective standard of whether a reasonable person … would have had no choice but to resign." *Perkins v. Int'l Paper Co.*, 936 F.3d 196, 212 (4th Cir. 2019). "[T]he Fourth Circuit has cautioned courts not to find constructive discharge in

---

[3] For this same reason, it does not matter that the Novavax vaccine was granted Emergency Use Authorization after Plaintiffs submitted their religious exemption requests. Plaintiffs' suggestion that this fact is relevant (Pl. Opp. at 6) implies that the Novavax authorization somehow modified their religious beliefs.

every instance where the employer has failed to reasonably accommodate the employee." *Johnson v. Kmart Corp.*, 942 F. Supp. 1070, 1073 (W.D. Va. 1996) (citing *Johnson v. Shalala*, 991 F.2d 126, 131 (4th Cir. 1993)).

Ellison cannot establish constructive discharge. Inova deemed Ellison in compliance with the IPP during the pendency of his religious exemption request, including on the day Ellison submitted his resignation letter on August 1, 2022. SUMF ¶ 69. Although Ellison may have "felt anxious while awaiting [Inova's] decisions," that "does not suffice" to demonstrate constructive discharge. *Savel v. MetroHealth Sys.*, 2023 WL 4490395, at *10 (N.D. Ohio July 12, 2023). "[T]he prospect of being fired at the conclusion of an extended process" does not satisfy the "intolerability" requirement absent some attempt to "undermine the employee's position, perquisites, or dignity in the interim." *Id.* Ellison has not pointed to anything of the sort.

Instead, Ellison argues that Inova "act[ed] in a manner so as to have communicated to a reasonable employee that [he] will be terminated" and that he resigned only after the final deadline Inova had given him to be vaccinated. *Decoster v. Becerra*, 2022 WL 3083343, at *4 (D. Md. Aug. 3, 2022). But Ellison sought and obtained new employment—and submitted his resignation letter—before Inova reached a decision on his exemption request. SUMF ¶¶ 71-72. Although the effective date of his resignation was not until August 20, 2022, "a constructive-discharge claim accrues … when the employee gives notice of his resignation, not on the effective date of that resignation." *Green v. Brennan*, 578 U.S. 547, 564 (2016). Ellison's constructive discharge argument therefore turns on the circumstances of his employment on August 1, 2022, the day he "g[ave] notice of his resignation." *Id.* On that day, while Inova was still considering his exemption request, Ellison was not in a position "where a reasonable person in his position would have felt compelled to resign." *Green*, 578 U.S. at 555.

16

## IV. CONCLUSION

For the foregoing reasons, the Court will grant Defendants' Motion for Summary Judgment and deny Plaintiffs' Motion for Partial Summary Judgment in an order accompanying this memorandum opinion.

/s/
Hon. Michael S. Nachmanoff
United States District Judge

April 15, 2024
Alexandria, Virginia